**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NICHELLE JOHNSON,** | ) | **Case No. 1:15 cv 00691** |
| | ) | |
| **Plaintiff** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | | |

Plaintiff Nichelle Johnson ("Plaintiff") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. ("Act"). For the reasons set forth below, the Commissioner's final decision is reversed and this matter is remanded for further proceedings.

## I. Procedural History

On May 31, 2012, Plaintiff filed her application for SSI, alleging disability due to depression, bipolar disorder, schizophrenia, and rheumatoid arthritis.  (Doc. 11[1] at 137-42).  The claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an

---

[1]Transcript of proceedings, hereinafter referred to as "Tr."

administrative law judge ("ALJ").  On October 21, 2013, an ALJ held a hearing on Plaintiff's claims. (Tr. 28-57).  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A vocational expert also testified.  (*Id.*).  On November 13, 2013, the ALJ issued a notice of decision - Unfavorable. (Tr. 11-27).  On February 24, 2015, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6).

On April 8, 2015, Plaintiff filed a complaint challenging the Commissioner's final decision.  (Doc. No. 1.).  The parties have completed briefing in this case.[2]  Plaintiff asserts one assignment of error, to wit, that the ALJ erred by failing to grant appropriate weight to the opinions of Plaintiff's treating and examining physicians.

## II. Evidence

### A. Personal and Vocational Evidence

At the time of the administrative hearing, Plaintiff was forty-four years old.  She attended school through the ninth grade and later obtained a GED.  (Tr. 36).  Plaintiff is divorced and lives with a nine-year-old child.  (Tr. 37).  Plaintiff testified that she last worked as a baby sitter in the year 2000.  (Tr. 38).

---

[2]The parties had previously consented to the exercise of jurisdiction by the magistrate judge, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. #: 13). On March 29, 2016, following the retirement of Magistrate Judge Greg White, the parties withdrew consent, and this matter was transferred to the referral docket of Magistrate Judge Thomas Parker. (General Order 2016-3).  On April 21, 2016, by non-document Order, the Court terminated the referral, placing this matter before the undersigned judge.

**B. Medical Evidence**

**1. Mental Health History and Treatment**

**a. Connections Health and Wellness**

On November 2, 2010, Plaintiff underwent a psychiatric evaluation at Connections Health and Wellness.  (Tr. 270-71).  The record indicates that she was well-groomed and logical and did not display any signs of aggression, delusions, or hallucinations.  (Tr. 271).  The evaluator noted that Plaintiff had previously sought treatment for bipolar disorder and psychosis in 2006 and that she had been receiving treatment since she was 17 years old.  (Tr. 270). Plaintiff reported feeling stressed and irritable.  (*Id.*).  The evaluator diagnosed bipolar disorder with psychotic features, cocaine dependence in remission, and cannabis abuse.  (Tr. 272).  It was noted that she had multiple severe psychosocial stressors, and a GAF score of 60 was assigned. (*Id.*).  She was given a prescription for medication and told to follow-up in four to six weeks. (Tr. 273).

**b. Dr. Joseph Konieczny**

The record does not indicate that Plaintiff followed-up for treatment after that appointment.  However, the following year on August 11, 2011, Plaintiff presented to J. Joseph Konieczny, Ph.D., for a psychological evaluation in connection with her application for SSI. (Tr. 196-200).  Plaintiff reported to Dr. Konieczny that she had difficulties controlling her temper. (Tr. 196-98).  Dr. Konieczny noted that she was cooperative, maintained appropriate eye contact, and showed no indications of undue impulsivity.  (*Id.*).  Plaintiff also reported mood swings and described a diminished level of motivation.  (Tr. 197).  She reported some past thoughts and attempts of suicide, but she denied any such thoughts recently.  (Tr. 198).  Plaintiff

-3-

stated that she had a history of auditory hallucinations, but she indicated she had not had these episodes since she started taking her medication.  (*Id.*).  Plaintiff was reportedly oriented for person, place, and time.  (*Id.*).  Her ability to concentrate and to attend to tasks showed no indications of impairment.  (*Id.*).  She was able to perform a serial three subtraction task without error.  (*Id.*).  She was able to recall three out of three objects after a period of five minutes.  (*Id.*).  She was able to spell the word "world" backwards.  (*Id.*).  She showed no deficits in her general fund of information and no deficits in her ability to perform logical abstract reasoning.  (*Id.*).

Dr. Konieczny diagnosed schizoaffective disorder, depressive type.  (Tr. 199).  It was noted that Plaintiff had a history of treatment for bipolar disorder, but that she did not appear to have consistently exhibited symptoms that would indicate manic or hypomanic episodes.  (*Id.*).  It was Dr. Konieczny's opinion that Plaintiff would have difficulty maintaining focus and persistence, particularly in multi-step tasks, due to depressive symptoms and occasional psychotic symptoms.  (*Id.*).  He indicated that these symptoms also caused her to have poor coping skills and difficulty in a supervision situation.  (*Id.*).  Dr. Konieczny further opined that, because of her limited coping skills and a diminished tolerance for frustration, Plaintiff would be vulnerable to even mild pressures in a work setting.  (*Id.*).  Dr. Konieczny assigned Plaintiff a Global Assessment of Functioning (GAF) score of 50, indicating serious limitations.  (Tr. 200).

### c. Dr. Sylvester Smarty

On March 13, 2012, Plaintiff began treatment with Sylvester Smarty, M.D.  (Tr. 226).  During that appointment, Plaintiff reported being moody most days (Tr. 224), but that her mood had been good and that she was feeling better on the day of her visit.  (Tr. 226).

-4-

On May 22, 2012, Plaintiff told Dr. Smarty that she had been having headaches but denied any psychosis.  (Tr. 224).  Dr. Smarty observed that Plaintiff was well-groomed and dressed appropriately with normal speech; that her thought process was concrete; that she denied any visual or auditory hallucinations; that she was uncooperative and sullen, not answering questions, but that she showed good cognition, insight, and judgment.  (*Id.*).  Dr. Smarty reported that Plaintiff was unhappy, with angry and constricted affect.  (*Id.*)

On May 29, 2012, Dr. Smarty reported that Plaintiff's condition improved and her mental status and thought process were normal.  (Tr. 264).  She reportedly had no delusions or obsessions, and she was calm and cooperative with good insight and judgment.  (Tr. 264).  On May 29, 2012, Plaintiff reported poor sleep, depressed mood and more irritability.  (Tr. 222).  Dr. Smarty increased Plaintiff's dosage for Seroquel and Wellbutrin.  (Tr. 223).

On July 24, 2012, Plaintiff reported to Dr. Smarty that her mood was improving and that she had not experienced any hallucinations or paranoid beliefs "in a long time."  (Tr. 262).  On September 18, 2012, Plaintiff reported that she was "so-so," that her mood was "jacked-up," and that she was noncompliant with her meds.  (Tr. 260).  Dr. Smarty continued Plaintiff's Seroquel and Wellbutrin and continued to offer supportive therapy.  (Tr. 261).

In November 2012, Plaintiff told Dr. Smarty that she "pulled a gun" on her sons ages 28 and 26, two weeks prior because they were being disrespectful, but said she was doing "good" at her appointment.  (Tr. 258).  Plaintiff also reported obsessive symptoms such as washing her hands four times a day and cleaning things several times. (*Id.*).

On February 12, 2013, Plaintiff told Dr. Smarty that she was doing well, that her mood had been good, and that she had not been experiencing any symptoms of psychosis.  (Tr. 297).

-5-

On April 30, 2013, Plaintiff complained to Dr. Smarty of increased psychotic episodes and fear of going outside.  (Tr. 253).  She was paranoid and wanting to hurt someone. (*Id.*). Dr. Smarty noted delusions and paranoia, intermittent auditory and visual hallucinations, and depression with full range of emotional expression.  (*Id.*). Plaintiff reported that two weeks prior she had missed taking her medications for about a week.  (Tr. 299).  Dr. Smarty noted that Plaintiff was concise and logical, dressed appropriately, and had normal speech.  (*Id.*). She was calm and cooperative and had good cognition and insight.  (*Id.*).

On May 7, 2013, Plaintiff saw Dr. Smarty, and she reported she was doing better that day.  (Tr. 302).  Plaintiff stated that she had been taking her medication and started attending church, which she said had a "positive effect."  (*Id.*).  She did not have any thoughts of hurting others and had been sleeping well.  (*Id.*).

On June 27, 2013, Dr. Smarty's treatment notes show that Plaintiff was reporting episodes of psychosis, during which, she heard voices. (Tr. 303).

On August 27, 2013, Dr. Smarty completed a questionnaire concerning Plaintiff's mental limitations.  (Tr. 276-78).  Dr. Smarty reported initially treating Plaintiff on October 12, 2010 and noting follow-up visits every four to eight weeks.  Dr. Smarty reported that Plaintiff's diagnosis was bipolar disorder with psychotic symptoms and anxiety disorder, not otherwise specified.  (Tr. 275).

Despite medication adjustments, Dr. Smarty opined, Plaintiff's illness remained serious with several relapses.  (*Id.*).  It was Dr. Smarty's opinion that Plaintiff would be unable to sustain and eight hour work day, five days a week.  (*Id.*).  Dr. Smarty reported that Plaintiff experiences daily symptoms severe enough to interfere with attention and concentration necessary to perform

simple tasks. (Tr. 276).  He further reported that she has poor ability to get along with co-workers, supervisors and the general public due to frequent mood swings and chronic paranoia.  (*Id.*).  Dr. Smarty stated that Plaintiff has poor ability to respond appropriately to work pressures due to the severity of her mental health symptoms.  (*Id.*). Dr. Smarty further reported that Plaintiff is very unstable and unable to function on a consistent basis. (*Id.*).

On August 27, 2013, Dr. Smarty also completed a mental residual functional capacity assessment, which set forth the following conclusions: that Plaintiff had moderate limitations in her ability to understand, remember and carry-out simple instructions; that she had extreme limitations in her ability to make judgments on simple work-related decisions; that she had extreme limitations in her ability to understand and remember complex instructions; that she had extreme limitations in her ability to carry out complex instructions; and that she had extreme limitations in her ability to make judgments on complex work-related decision.  (Tr. 277).  Dr. Smarty supported these assessments with the finding that Plaintiff had daily depressed mood with emotional lability, poor sleep, agitated behavior, psychosis, auditory hallucinations and paranoid delusions.  (*Id.*).

Dr. Smarty also noted extreme limitations in Plaintiff's ability to interact appropriately with supervision, coworkers, and the public.  (Tr. 278).  He noted that Plaintiff was very irritable and has a very difficult time getting along with others.  (*Id.*).  Dr. Smarty stated that Plaintiff had difficulty focusing, completing tasks and adapting to life stressors.  (*Id.*).

### d. State Agency Psychologists

State agency psychologists reviewed Plaintiff's claim in both June 2012 and November 2012.  Plaintiff's claim was evaluated under Listing 12.04 - Affective Disorders. The agency

-7-

psychologists noted that Plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and, moderate difficulties in maintaining concentration, persistence or pace.  (Tr. 62, 75).  It was found that Plaintiff's mental impairment limited her to tasks where duties are relatively static and where changes can be explained.  The reviewers noted that Plaintiff would not require independent prioritization or more than daily planning.  (Tr. 79).  In November 2012, it was noted that Plaintiff would be restricted to circumstances with no need for close, sustained focus/attention or sustained fast pace.  (Tr. 79).  It was also observed that Plaintiff was capable of interacting occasionally and superficially in situations that do not require resolving conflict or persuading others to follow demands.  (Tr. 66, 79).

### 2. Physical

#### a. University Hospital

Records from University Hospital reveal that Plaintiff was seen for an evaluation of a left knee cyst on April 12, 2012.  (Tr. 209).  Plaintiff complained of difficulty with sitting, standing and walking for greater than five minutes at a time.  (*Id.*).  An MRI showed a Baker's cyst in Plaintiff's left knee, and Plaintiff was treated with medication (Mobic).  (*Id.*).

#### b. Dr. Warren

Plaintiff was seen by Dr. Warren for initial evaluation on June 20, 2013. (Tr. 292-294). After reviewing Plaintiff's history, imaging and laboratory data, and conducting a physical examination, Dr. Warren's impression was that Plaintiff was suffering from chronic pain involving her back, upper and lower extremities.  (Tr. 294).  Plaintiff had a slightly elevated

sedimentation rate and weakly positive ANA.  (*Id.*).  Her examination showed multiple tender

points and a history consistent with fibromyalgia.  (*Id.*).

On August 29, 2013, Dr. Warren completed a questionnaire regarding Plaintiff's physical

abilities.  (Tr. 281-82).  Dr. Warren reported a cyst on Plaintiff's left fossa and that Plaintiff was

experiencing pain and buckling of her left knee and COPD.  (Tr. 281).  It was Dr. Warren's

opinion that Plaintiff could sit six hours throughout an eight hour work day; stand and walk two

hours in an eight hour work day, and that lifting would be limited to 30 pounds.  (Tr. 282).

Plaintiff would be expected to be absent two days per month.  (*Id.*).  Dr. Warren also completed

a physical residual functional capacity assessment in which he indicated that Plaintiff was

capable of lifting and carrying 10 pounds frequently, 20 pounds occasionally.  (Tr. 283).

Plaintiff could sit two hours at a time for a total of six hours; standing would be limited to 30

minutes at a time for a total of two hours; walking would be limited to two hours at a time for a

total of four hours.  (Tr. 284).  Dr. Warren reported that Plaintiff's bilateral knee pain limited her

to occasional operation of foot controls on the right foot and never operation of foot controls on

the left foot.  (Tr. 285).  Dr. Warren reported that Plaintiff should never climb, balance, stoop,

crouch, crawl or kneel.  (Tr. 286).  She should avoid unprotected heights, dust, odors, fumes,

pulmonary irritants, extreme cold and heat, and vibration.  (Tr. 287).  Dr. Warren further

reported that Plaintiff could not walk at a reasonable pace on rough or uneven surfaces and she

could not climb a few steps at a reasonable pace with the use of a single hand rail.  (Tr. 288).

### c. State Agency Consultants

The physical aspects of Plaintiff's claim were reviewed by the state agency consultants in

July 2012 and, again, in November 2012. It was found that Plaintiff would be capable of a range

of medium work activity. (Tr. 63-64, 77-78). The state agency consultants concluded that Plaintiff could lift up to fifty pounds occasionally, twenty-five pounds frequently, stand and/or walk up to six hours in an eight-hour workday, occasional climbing of ladders, ropes and scaffolds, and occasional kneeling and crawling. (Tr. 24).

### C. Hearing Testimony

#### 1. Plaintiff's Hearing Testimony

At her October 21, 2013 hearing, Plaintiff testified that she could not work because she had difficulty getting along with others.  (Tr. 39-40).  She said she was better off by herself and that she does not like being told what to do.  (Tr. 40).  Plaintiff also testified that she gets panic attacks when she goes out and stated that a month prior to the hearing she had a panic attack when she went to the grocery store with her daughter.  (Tr. 41).  She stated that the panic attack was caused by too many people being in one spot, and as a result, she left the store.  (Tr. 42). Plaintiff also stated that she has pain in her knees, back, and migraines that prevent her from working.  (Tr. 42).  She stated that her back pain had been present for about 15 years and that she used muscle relaxers that sometimes helped.  (Tr. 43).  Plaintiff stated that she could only be on her feet for about 45 minutes to an hour and that she could carry about 10 to 15 pounds.  (Tr. 49).

#### 2. Vocational Expert's Hearing Testimony

The ALJ asked the vocational expert to assume a hypothetical individual with Plaintiff's age and education.  The ALJ also asked him to assume that the individual could lift or carry 50 pounds occasionally and 25 pounds frequently, stand or walk six hours out of eight, and sit for six hours out of eight.  (Tr. 52).  It was assumed the individual would occasionally climb ladders, ropes, or scaffolds and occasionally kneel or crawl.  (*Id.*).  He further assumed a setting with no

fast pace, no need for close sustained concentration, no requirement to make independent plans or set realistic goals about how to complete work, and no more than infrequent changes that could be easily explained.  (*Id.*).  It was also assumed that the individual could occasionally interact with supervisors, coworkers, and the public if that interaction is limited to speaking and signaling.  (Tr. 53).  Based on those assumptions, the vocational expert testified that the hypothetical individual could work as a laundry laborer, kitchen helper, or janitor.  (Tr. 53).

The ALJ's second hypothetical posed to the vocational expert was the same as the first but with a limitation to "light" work.  (Tr. 54).  The vocational expert stated that such person could be a housekeeping cleaner, mail clerk, or clerical assistant.  (Tr. 54).

The ALJ's third hypothetical question added an additional limitation to the second hypothetical that the individual would be absent two times per month.  (Tr. 55).  The vocational expert testified that, if the individual was absent two times or more a month on an ongoing basis, all work would be eliminated.  (*Id.*)

The ALJ's fourth hypothetical added the limitation that the hypothetical worker would be off-task 20% of the time.  The vocational expert testified there would be no work for such an individual.  (*Id.*).

Counsel then questioned the vocational expert whether it is necessary for an individual to be able to interact appropriately with a supervisors.  (Tr. 55).  The vocational expert testified that, if the problem was significant enough where it would cause a problem, all work would be eliminated. (Tr. 56).

### III. Standard for Disability

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. § 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. § 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. § 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. § 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. § 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. § 416.920(g).

### IV. Summary of the Commissioner's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 10, 2012, the date of application (20 C.F.R. § 416.971 et seq.); that she has severe impairments, including dysfunction of major joints (knees), and affective disorders (20 C.F.R. § 416.920(c)).  However, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

The ALJ concluded that Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c). Specifically, the ALJ determined that Plaintiff had the capacity for lifting and carrying fifty pounds occasionally, twenty-five pounds frequently, standing and walking for six hours out of an eight hour work day, sitting for six hours out of an eight hour work day; occasional climbing of ladders, ropes, and scaffolds; and occasional kneeling or crawling.  In addition, the ALJ determined that Plaintiff can perform tasks in a setting with no fast pace, no need for close, sustained concentration, no requirement to make independent plans or set realistic goals about how to complete work, and no more than infrequent changes that can be easily explained; and occasionally interact with supervisors, co-workers, and the public if that  interaction is limited to speaking and signaling.

The ALJ based his physical RFC determination largely on the findings of the state agency physicians, whose opinions he gave great weight.  The ALJ concluded that the opinion of treating physicians Dr. Warren and Dr. Smarty merited little weight. He gave the opinion of Dr. Konieczny some weight.

-13-

The ALJ further determined that Plaintiff had no past relevant work (20 C.F.R. § 416.965); that she was born on October 23, 1968 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. § 416.963); that Plaintiff has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964); that transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. § 416.968).

The ALJ determined that, considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 416.969 and § 416.969(a)).  This determination appears to have been based on the Vocational Expert's first hypothetical.  The ALJ accordingly decided that Plaintiff had not been under a disability, as defined in the Social Security Act, since May 10, 2012, the date the application was filed (20 C.F.R. § 416.920(g)).  Her application for benefits were accordingly denied.

## V. Law and Argument

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The Court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the Court does not review the evidence *de novo*, make credibility determinations,

-14-

or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B. The Treating Physician Rule

In the present case, the ALJ resolved Plaintiff's claim at step five, concluding that based on her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she could perform.  Plaintiff maintains that this conclusion was in error because the ALJ failed to assign the proper weight to the opinion of her treating physicians Dr. Smarty and Dr. Warren.  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  In this case, there is no question that Dr. Smarty and Dr. Warren qualify as treating physicians.

Social Security regulations require the agency to "give good reasons" for not giving controlling weight to a treating physician in the context of a disability determination.  20 C.F.R. § 404.1527(d)(2) (2004).  This requirement is part of the "treating source" regulation adopted by the Social Security Administration in 1991.  *See Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir.1998).

-15-

Pursuant to this regulation, an ALJ must give more weight to opinions from treating sources since

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).  "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'"  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).

If, as is the case here, an ALJ decides to give a treating source's opinion less than controlling weight, the ALJ must apply certain factors–namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source–in determining what weight to give the opinion.  20 C.F.R. § 404.1527(c)(2))

As stated in the regulations, this analysis is mandatory: "We will *always* give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."  20 C.F.R. § 404.1527(d)(2) (emphasis added).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

-16-

medical opinion and the reasons for that weight."  Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).  The Sixth Circuit has recognized the importance of the "good reasons" requirement and the consequences for violating it:

> We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.

*Wilson*, 378 F.3d at 545 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

"The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).  The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.  *See Halloran*, 362 F.3d at 32-33.

**C. Did the ALJ provide "good reasons" for discounting Dr. Smarty's Opinion?**

As described more fully below, upon review of the entire record, the Court concludes that the ALJ failed to provide "good reasons" for discounting Dr. Smarty's opinion.  Additionally, the ALJ failed to apply the requisite factors when determining the proper weight to be assigned to his opinion.

The ALJ's written decision provided the following explanation:

Little weight is given to the opinion of the claimant's treating psychiatrist, Sylvester Smarty, M.D. who completed the medical source statement (mental) dated August 27, 2013 because the objective evidence does not support such extreme limitations in all categories as Dr. Smarty opined to.

-17-

The agency's articulated basis for rejecting Dr. Smarty's opinion – that "the objective evidence does not support such limitations in all categories as Dr. Smarty opined to" – amounts to nothing more than a restatement of the standard, i.e. that Dr. Smarty's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." See 20 C.F.R. § 404.1527(d)(2).  By simply restating the standard, the ALJ fails to provide the claimant with a clear understanding why, despite her own physician's finding of serious to extreme limitations, the agency concluded she was not disabled.  Similarly, because there is little if any substance to the ALJ's explanation, the Court is unable to perform a meaningful review of the decision.

Further, the Court concludes that the Commissioner did not follow the administration's procedural rules when the ALJ failed to address the above-cited factors for determining the proper weight to accorded to Dr. Smarty's opinion.  Notably, the ALJ did not consider the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, and the specialization of the treating source. *See Wilson*, 378 F.3d at 544. Because consideration of these factors is mandatory, *see supra*, remand is appropriate.

The Commissioner offers a number of reasons that the Court should nonetheless accept the ALJ's explanation as sufficient, but none of them pass muster. First, the Commissioner's post hoc rationalization for discounting Dr. Smarty's opinion is contrary to the law of Sixth Circuit. While, as the Commissioner points out, there are portions of Dr. Smarty's treatment notes showing that Plaintiff's condition had improved and was, in *some* respects, normal (Tr. 254, 297, 299, 302, 303), the ALJ did not cite this evidence as a basis for rejecting Dr. Smarty's opinion. Rather, this explanation appears for the first time in the briefing now before the Court.  This Court "may not accept appellate counsel's *post hoc* rationalizations for agency action.  It is well-

-18-

established that an agency's action must be upheld, if at all, on the basis articulated by the

agency itself." *Berryhill v. Shalala*, 4 F.3d 993 (6th Cir. 1993) (quoting *Motor Vehicle Mfrs.*

*Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citation omitted)).  Therefore,

because the reasons now being provided were not articulated by the ALJ, they are rejected.

Next, the Court is not swayed by the Commissioner's suggestion that the error is

harmless because there is substantial evidence on the record to support the Commissioner's

decision. As stated in *Wilson*,

> [a] court cannot excuse the denial of a mandatory procedural protection simply because
> . . . there is sufficient evidence in the record for the ALJ to discount the treating source's
> opinion and, thus, a different outcome on remand is unlikely. "[A] procedural error is not
> made harmless simply because [the aggrieved party] appears to have had little chance of
> success on the merits anyway."

*Wilson,* 378 F.3d at 546 (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n. 41 (D.C. Cir.

1977).

Finally, the Commissioner maintains that even if the Commissioner's explanation is

insufficient, reversal and remand is not warranted here because Dr. Smarty's opinion is "so

patently deficient that an ALJ could not reasonably credit it." In *Wilson*, the Sixth Circuit held

that the reason-giving requirement is mandatory, but the court opined that there may be

circumstances where a failure to give good reasons is harmless error. As stated in *Wilson*,

> That is not to say that a violation of the procedural requirement of § 1527(d)(2) could
> never constitute harmless error. We do not decide the question of whether a de minimis
> violation may qualify as harmless error. For instance, if a treating source's opinion is so
> patently deficient that the Commissioner could not possibly credit it, a failure to observe
> § 1527(d)(2) may not warrant reversal.

*Id.* at 547.  In the present case, the Commissioner argues that Dr. Smarty's opinion is patently

deficient because, in certain instances, Dr. Smarty's treatment notes indicate that Plaintiff's

-19-

mood had improved, and, in other instances, she reported that she was doing well.  The

Commissioner also points out that Plaintiff denied experiencing delusions when she took her

medication. The Commissioner further indicates that there is no record of Plaintiff having

extreme limitations in her ability to work with or around other people.  Finally, the

Commissioner claims that Plaintiff's mental status examinations were normal.

The Commissioner is correct that over the course of her treatment, Plaintiff's condition,

at times, showed improvement and that, at times, Plaintiff reported doing well. However, at other

times this was not the case.  For example, Dr. Smarty observed Plaintiff's agitated behavior,

depression, moodiness (Tr. 224), an intense, angry, constricted affect (Tr. 224), and irritability

(Tr. 222).  Plaintiff reported auditory hallucinations, paranoid delusions, obsessive hand-

washing, psychotic episodes, panic attacks, and fear of leaving her home.  There is a report that

Plaintiff pulled a gun on her sons for being disrespectful. Furthermore, Dr. Smarty's opinion is

not inconsistent with the findings of Dr. Konieczny, whose opinion the Commissioner largely

credited.  (See Tr. 21).  Dr. Konieczny diagnosed schizoaffective disorder, and he observed both

depressive and psychotic symptoms.

Plaintiff presented to Dr. Smarty numerous times over the course of two years.  As such,

Dr. Smarty's opinion has some weight based simply on the number of visits and the length of the

treatment relationship. *See Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 462 (6th Cir. 2005)

(the length of the treatment relationship bears on whether the opinion of a treating physician is

patently deficient).  Moreover, Dr. Smarty's opinion was not without explanation or support.

*See May v. Astrue*, 2009 WL 4716033 at *8 (S.D. Ohio 2009) (finding opinion patently deficient

where source simply checked boxes about plaintiff's grasping ability and failed to provide

-20-

supporting explanations or objective evidence).  As explained in the Medical Source Statement,

Dr. Smarty based his findings on Plaintiff's presentation of "daily depressed mood with

emotional lability, poor sleep, agitated behavior, psychosis, auditory hallucinations, and paranoid

delusions." (Tr. 277).

The Sixth Circuit has consistently acknowledged the importance of the "reason-giving"

requirement in the context of a treating source opinion.  In this case, Dr. Smarty's opinion is not

so totally off the mark that the ALJ should have felt free to almost completely ignore it.  The

reasons now being provided by the Commissioner for discounting Dr. Smarty's opinion could

have easily been provided at the administrative level, in order to explicitly, and properly, explain

the weight being assigned to the treating source opinion.  The ALJ's final decision may very

well be the same on remand, but remand is still necessary.  *See Mazaleski*, 562 F.2d  at 719 n.

41. ("a procedural error is not made harmless simply because the [aggrieved party] appears to

have had little chance of success on the merits anyway.").  "To hold otherwise ... would afford

the Commissioner the ability [to] violate the regulation[s] with impunity and render the

protections promised therein illusory." *Wilson*, 378 F.3d at 546.

In sum, the ALJ failed to provide "good reasons" for giving Dr. Smarty's opinion less

than controlling weight.  On remand the ALJ shall properly evaluate Dr. Smarty's opinion and

provide, in a manner consistent with the law, specific and comprehensive reasons for deciding

the weight to be assigned.

### D. Dr. Warren

The ALJ gave "little weight" to Dr. Warren's opinion because

[Dr. Warren] found that the claimant is limited to lifting and carrying up to twenty
pounds occasionally and ten pounds frequently, but treatment records and the claimant's

-21-

> testimony establish that the claimant can lift and carry more weight.  Furthermore, Dr.
> Warren's opinion is contradictory in regards to how long the claimant can stand for in an
> eight-hour day.

(Tr. at 21). There is no dispute that the opinion of Dr. Warren, being that of a treating source, is to be afforded controlling weight, if his opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'"  *Wilson*, 378 F.3d at 544.  As discussed at length above, the ALJ must give "good reasons" for the weight assigned to the opinion of a treating physician.

In this case, the ALJ failed to give good reasons in accordance with the regulations. The ALJ discredited Dr. Warren's opinion that Plaintiff was limited to lifting/carrying twenty pounds occasionally and ten pounds frequently, on the ground that Plaintiff's own testimony established that she can lift and carry more than that.  Contrary to the ALJ's assertion, Plaintiff did not testify that she was capable of lifting/carrying more weight than that opined to by Dr. Warren. Rather, she testified that she could lift 10 to 15 pounds and that she could carry that amount for a short distance.  (Tr. 49).  Plaintiff's own testimony is consistent with Dr. Warren's opinion. Therefore, it is not a proper ground for discrediting Dr. Warren's opinion.

The ALJ further discounted Dr. Warren's opinion based on the assertion that it conflicts with her treatment records.  However, the ALJ does not state which treatment records conflict with Dr. Warren's assessment.  As such, this explanation is inadequate, because it fails to provide a basis for this Court's review, and it fails to provide Plaintiff with a meaningful understanding why the opinion of her own physician was rejected. Reversal is necessary.  When assessing Dr. Warren's opinion on remand, the ALJ shall thoroughly and clearly explain the

-22-

specific reasons for the weight he assigns to Dr. Warren's opinion, in accordance with the factors listed at 20 C.F.R. § 404.1527.

### E. Dr. Konieczny

As for Dr. Konieczny, the ALJ stated,

> Some weight is given to the opinion of Dr. Konieczny who performed the psychological consultative examination on August 11, 2011 and diagnosed the claimant with schizoaffective disorder, depressive type because the diagnosis is consistent with the record as a whole.

(Tr. at 21).  Because it has already been determined that remand is necessary on the grounds described above, the Court need not decide whether the ALJ properly evaluated Dr. Konieczny's opinion. However, it bears noting that the opinion of an examining medical source, such as Dr. Konieczny, is generally entitled to greater weight than a non-examining source.  On remand, the ALJ shall consider Dr. Konieczny's opinion in light of the whole record and assign the appropriate weight in accordance with the law.

## VI. Whether an Award of Benefits is Appropriate

A judicial award of benefits is proper only where proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking.  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Upon review of the record, the Court concludes that a judicial award of benefits is not appropriate in this case.

## VII. Conclusion

For the foregoing reasons, the decision of the Commissioner is reversed and this matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_/s/ Dan Aaron Polster    6/15/2016_
**Dan Aaron Polster**
**United States District Judge**